1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

BOUALEM HABIB,

Plaintiff,

v.

TOTE SERVICES,

Defendant.

Case No. C14-1685RSL

ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-
MOTION FOR SUMMARY
JUDGMENT

This matter comes before the Court on the parties' cross-motions for summary judgment.
Dkt. ## 40, 48.  Plaintiff Boualem Habib claims that his employer, defendant Tote Services, Inc.,
discriminated against him based on his race, national origin, and religion in violation of Title VII
of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and the Washington Law Against
Discrimination, RCW 49.60.010, *et seq*.  Having reviewed the parties' briefs, declarations,
exhibits, and the remainder of the record, the Court finds as follows.

## BACKGROUND

Defendant operates a maritime staffing service that provides operational crews to public
and private ship owners.  Dkt. # 41, ¶ 2.  The United States Maritime Administration contracts
with defendant to staff some of its missile-tracking vessels.  Dkt. # 41, ¶ 2.  In addition to the

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT - 1

operational crew provided by defendant, these vessels are staffed with a mission crew managed by the Missile Defense Agency.  Dkt. # 41, ¶ 2.

Missile-tracking vessels alternate between Full Operating Status and Reduced Operating Status.  Dkt. # 41, ¶ 3.  Full Operating Status occurs when a ship is preparing for or engaged in active Missile Defense Agency operations and requires a full operational and mission crew.  At all other times, the ships transition to Reduced Operating Status.  Dkt. # 41, ¶ 3.  In Reduced Operating Status, a reduced crew of ten or more operational staff is responsible for maintaining the inactive ship while it undergoes maintenance or waits in standby.  Dkt. # 42, Ex. B at 86.

In May 2012, defendant hired plaintiff, an Algerian-born Arab-American who is a practicing Muslim, to work as a 45-day relief steward aboard a missile-tracking vessel, the SS Pacific Tracker ("Tracker").  Dkt. # 16, ¶ 2.1; Dkt. # 42, Ex. A at 29–30; Dkt. # 42, Ex. D.  In June 2012, when the Tracker's permanent steward resigned, defendant hired plaintiff as a permanent steward aboard the Tracker.  Dkt. # 42, Ex. A at 31–33; Dkt. # 42, Ex. E.  As steward, plaintiff was responsible for preparing and serving the crew's meals and for maintaining the ship's supplies through inventorying and requisitioning.  Dkt. # 42, Ex. F at 123–25.  In Full Operating Status, plaintiff oversaw as many as eight steward assistants and shared his food preparation responsibilities with the Tracker's chief cook, whereas in Reduced Operating Status, plaintiff was the sole member of the steward's department and was directly responsible for all meal service.    Dkt. # 42, Ex. F at 123–25; Dkt. # 42, Ex. G at 139; Dkt. # 41, ¶ 7.

Sometimes, when the Tracker was in Reduced Operating Status, it would berth together with its sister ship, the SS Pacific Collector ("Collector").  Dkt. # 42, Ex. G at 139.  When the Tracker and the Collector berthed together in Reduced Operating Status, plaintiff was responsible for coordinating with the Collector's steward to prepare meals for the crews of the two ships.  Dkt. # 42, Ex. A at 55.  The Tracker and the Collector monthly alternated hosting the

1    combined crews for meals, and the steward of the visiting crew would assist the steward of the

2    hosting crew in preparing the meals.  Dkt. # 42, Ex. G. at 139; Dkt. # 43, Ex. P.

3        Plaintiff testified that, while working on the ship, he encountered bigoted comments from

4    other crew members.  For example, some used a racist slur to refer to African-Americans,

5    including President Barack Obama, Dkt. # 49-1 at 3–7; see also Dkt. # 49-2 at 9, and some

6    referred to plaintiff as "the Arab" and "a terrorist hijacker," Dkt. # 49-1 at 15–21, 37; see also

7    Dkt. # 49-2 at 1–11.  Plaintiff testified that one day, the Collector's chief engineer, Reuben

8    Grendahl, called plaintiff into the engine room, where other crew members were gathered, and

9    showed plaintiff a video of two missiles striking each other in the air, telling plaintiff, "this is

10   how we deal with terrorists."  Dkt. # 49-1 at 19–21.

11       In plaintiff's November 2012 crewmember evaluation, the Tracker's chief mate, Jeffrey

12   Royer, reported that plaintiff's performance was either "excellent" or "very good" in every

13   category.  Dkt. # 43, Ex. H.  Mr. Royer remarked that plaintiff was "an excellent chef and the

14   meals are superb. He runs a tight ship in the galley and the house is very well maintained."  As

15   to areas for improvement, Mr. Royer suggested that plaintiff "[r]eview provision consumption

16   from last mission for future reference" and submit paperwork earlier.  Dkt. # 43, Ex. H.

17       Plaintiff's crewmember evaluation on February 10, 2013 was similarly positive.  Dkt.

18   # 43, Ex. I.  Mr. Royer noted that plaintiff could improve by "[reviewing] actions that could be

19   taken to improve steward department morale without affecting supervision or performance."

20   Dkt. # 43, Ex. I.  In response to this suggestion, on February 12, 2013, plaintiff wrote that

21

22       The morale of the -entire ship- is of the utmost importance to the Chief

23       Steward.  On any given voyage one will always find a ship's crew

         member who would never be content no matter the circumstance.  In

24       my humble opinion, [t]he morale of the many trumps the satisfaction of

25       the lone -sea-lawyer- anytime.  I would appreciate it in the future if the

26   ORDER GRANTING DEFENDANT'S

27   MOTION FOR SUMMARY JUDGMENT AND
     DENYING PLAINTIFF'S CROSS-MOTION

28   FOR SUMMARY JUDGMENT - 3

1
2
3
4

> Ship's Master confronts me with the demoralized crewmember to assess the facts of the complaint and afford me the opportunity to apologize if the complaint is fact based.  It is always the least competent who complain the most.

5   Dkt. # 43, Ex. J.

6   On February 12, 2013, the Tracker and the Collector returned to Reduced Operating

7   Status and berthed together in Portland, Oregon.  Combined meal service began aboard the

8   Tracker.  Dkt. # 41, ¶ 10.  Also on February 12, 2013, the Collector's permanent steward took

9   leave, and Keesha Holloway, an African-American woman, was hired as a 60-day relief steward

10   for the Collector.  Dkt. # 41, ¶ 10; Dkt. # 43, Ex. K.  Ms. Holloway met with plaintiff to become

11   oriented to their respective steward roles on the two ships.  Dkt. # 43, Ex. L; Dkt. # 43, Ex. M.

12   Ms. Holloway left that meeting unsure of her responsibilities, understanding that plaintiff

13   intended to do the bulk of the steward work for both ships and intended her merely to clean up.

14   Dkt. # 43, Ex. M.

15   On February 14, 2013, Ms. Holloway suggested that she join plaintiff on his shopping trip

16   to purchase supplies, as she was unfamiliar with the area, plaintiff had the funds to purchase

17   supplies for both ships, and plaintiff was preparing to leave for a week-long vacation.  Dkt. # 43,

18   Ex. M.  Plaintiff refused, and Ms. Holloway, concerned that she would be unprepared for her

19   first week as the lone steward for both the Tracker and the Collector, explained the situation to

20   her supervisor, the Collector's chief mate Douglas Voss.  Dkt. # 43, Ex. L; Dkt. # 43, Ex. M.

21   That same day, Mr. Voss, Mr. Royer, and Mr. Grendahl approached plaintiff and asked

22   him to bring Ms. Holloway on his shopping trip.  Dkt. # 43, Ex. L; Dkt. # 43, Ex. M; Dkt. # 43,

23   Ex. N; Dkt. # 43, Ex. Q.  Plaintiff claims that during this conversation, Mr. Voss accused

24   plaintiff of harassing Ms. Holloway.  Dkt. # 43, Ex. L.  Ms. Holloway denies accusing plaintiff

25   of harassment.  Dkt. # 43, Ex. M.  Mr. Voyer and Mr. Grendahl deny that anyone accused

26
27   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT AND
     DENYING PLAINTIFF'S CROSS-MOTION
28   FOR SUMMARY JUDGMENT - 4

plaintiff of harassment; rather, they claim that Mr. Grendahl suggested that the conflict between plaintiff and Ms. Holloway might develop into harassment.  Dkt. # 43, Ex. N; Dkt. # 43, Ex. P; Dkt. # 43, Ex. Q.

On February 20, 2013, plaintiff wrote a letter explaining his side of the story.  In this letter, plaintiff states that he refused Mr. Grendahl's request to drive Ms. Holloway to the grocery store to show her how to order supplies, because he was not comfortable driving Ms. Holloway in his personal car and because "teaching a woman how to shop is a fool's errand.  I have enough problem[s] with my own wife['s] shopping habits."  Dkt. # 43, Ex. L.  Plaintiff claimed that Mr. Grendahl accused him of harassing Ms. Holloway and requested that the harassment allegations be submitted in writing so that he could contest them.  Plaintiff's letter also asked for a written apology from Mr. Grendahl "for falsely accusing me of harassment in the workplace of a female coworker and also for accusing me of hurting the morale of my departmental crewmembers during our last mission – 01/10/2013 to 02/10/2013."  Dkt. # 43, Ex. L.  The letter does not attribute this alleged false accusation to discrimination based on plaintiff's sex, religion, or national origin, nor does it mention any other instances in which plaintiff himself was harassed.  Dkt. # 43, Ex. L.

On February 22, 2013, Mr. Voss wrote to defendant Tote Services, Inc.'s human resources department to report plaintiff's refusal to cooperate with Ms. Holloway.  Dkt. # 43, Ex. O.  In this letter, Mr. Voss mentioned that plaintiff had "a history of being very hard to work with" and expressed "great concerns" about the upcoming meal service changeover from the Tracker to the Collector, "when the roles are reversed and [plaintiff] will be working for [Ms. Holloway]."  Dkt. # 43, Ex. O.

On February 28, 2013, the port engineer for the Tracker and the Collector, Dan Wyman, hosted a meeting with plaintiff, Ms. Holloway, and other senior crew members from the Tracker and the Collector.  Dkt. # 43, Ex. S.  At this meeting, Mr. Wyman characterized plaintiff as "a

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT - 5

true chef" with "great pride in his work" who "has a hard time of letting go of control."  Dkt. # 43, Ex. S.  The meeting did not solve the conflict between plaintiff and Ms. Holloway.  Dkt. # 43, Ex. S.  The next day, Mr. Wyman hosted a second meeting between plaintiff, Ms. Holloway, and senior crew members of the Tracker and the Collector.  Dkt. # 43, Ex. U. Plaintiff was issued a verbal warning over his failure to cooperate.  Dkt. # 42, Ex. C.

Following this second meeting, Robert Rogers, defendant's vice president of human resources, emailed the port agent of the Seafarers International Union, of which plaintiff is a member, to request that a representative from the union speak with plaintiff.  Mr. Rogers wrote that "Mr. Habib is extremely competent as far as food preparation, but also appears to be very stubborn and set in his ways – much of which may or may not be cultural.  Candidly, while Ms. Holloway seems to be a 'team player,' Mr. Habib appears to be the issue going forward."  Dkt. # 49-2 at 51.

On March 2, 2013, the ships' joint meal service changed over to the Collector.  Dkt. # 43, Ex. V.  Plaintiff took scheduled leave from March 2 to March 5, 2013.  Dkt. # 41, ¶ 16.  On March 6, 2013, plaintiff failed to report to work aboard the Collector.  Later that morning, he was found working aboard the Tracker.  Dkt. # 43, Ex. V.  Plaintiff was explicitly directed to report to the Collector the following day to assist Ms. Holloway in preparing the morning and noon meals for the crews of the Tracker and the Collector.  Dkt. # 41, ¶ 16; Dkt. # 42, Ex. A at 43–44.  After this conversation, plaintiff assisted Ms. Holloway in preparing the noon meal aboard the Collector.  Dkt. # 41, ¶ 17; Dkt. # 42, Ex. A at 43–44.

On the morning of March 7, 2013, plaintiff hand-delivered a letter to Mr. Wyman, explaining that the previous morning he had reported to work on the Tracker rather than on the Collector because he understood that he had been "expressly directed" to do so.  Dkt. # 43, Ex. AA; Dkt. # 41, ¶ 18.  In this letter, plaintiff wrote that he could no longer work on the Collector, but that he would be willing to perform his duties aboard the Tracker.  Plaintiff attributed his

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT - 6

1   "low morale" to "the patronizing behavior of [Mr. Royer]" and "the obvious double standard

2   that has been occurring since [Ms. Holloway] started her unfounded complaints against me."

3   Dkt. # 43, Ex. AA.

4           That same morning, plaintiff failed to report to work on the Collector to assist Ms.

5   Holloway with breakfast preparation as requested.  Dkt. # 42, Ex. A at 41–42, 45, 48; Dkt. # 42,

6   Ex. C.  Mr. Wyman issued a warning letter to plaintiff, citing his failure to report and to assist

7   Ms. Holloway, and warning plaintiff that "repetition of this offense, or any other act of

8   misconduct will be grounds for your immediate dismissal."  Dkt. # 43, Ex. V.  Plaintiff declined

9   to sign the warning letter and again refused to assist Ms. Holloway with preparation of the noon

10  meal.  Dkt. # 43, Ex. V; Dkt. # 42, Ex. A at 49–50; Dkt. # 42, Ex. C.  Later that day, defendant

11  fired plaintiff, citing his "refus[al] to follow direct orders" to work in collaboration with Ms.

12  Holloway.  Dkt. # 42, Ex. C; Dkt. # 43, Ex. AA.

13          On March 11, 2013, plaintiff filed a grievance report with the Seafarers International

14  Union.  Dkt. # 43, Ex. BB.  In his report, plaintiff stated that he had been "expressly told" to

15  work exclusively aboard the Tracker, and that the decision to reprimand him but not Ms.

16  Holloway revealed a "blatant [d]ouble standard."  Dkt. # 43, Ex. BB.  After investigation, the

17  Union declined to pursue the grievance, explaining that "[b]ased upon the evidence offered by

18  the Company, it is unlikely that the Union could persuade an arbitrator that the Company did not

19  have adequate reason for their decision" and "[i]n this case the employer appears to have

20  sufficiently supported its reason for the action taken."  Dkt. # 43, Ex. X.  In October 2013,

21  Plaintiff filed a charge with the Regional Director of the National Labor Relations Board,

22  claiming that the Union had violated its duty to represent him.  Upon concluding that there was

23  insufficient evidence demonstrating that the Union had acted unreasonably, the Regional

24  Director declined to issue a complaint.  Dkt. # 43, Ex. Z; Dkt. # 43, Ex. Y.

25          In November 2013, plaintiff filed a charge of discrimination with the Washington State

26
27  ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT AND
    DENYING PLAINTIFF'S CROSS-MOTION
28  FOR SUMMARY JUDGMENT - 7

1   Human Rights Commission and the federal Equal Employment Opportunity Commission

2   (EEOC), alleging that on February 14, 2013, he had been falsely accused of harassment, and that

3   on March 7, 2013, he had been discharged due to discrimination based on his sex, religion,

4   national origin, and in retaliation for his protests.  Dkt. # 43, Ex. CC.  In this charge, plaintiff

5   stated that the date of both the earliest and the latest acts of discrimination was March 7, 2013.

6   Dkt. # 43, Ex. CC.  Plaintiff also appealed the Regional Director's decision to the NLRB's

7   Office of the General Counsel, but in January 2014 that office denied the appeal.  Dkt. # 43, Ex.

8   Z.  In August 2014, the EEOC recommended dismissing plaintiff's charge of discrimination.

9   Dkt. # 43, Ex. DD.

10          In November 2014, plaintiff filed this lawsuit, alleging discriminatory termination,

11  harassment, and retaliation in violation of Title VII.  Dkt. # 1.  Plaintiff filed an amended

12  complaint in September 2015, adding discrimination claims under the Washington Law Against

13  Discrimination.  Dkt. # 16.  Defendant moved for summary judgment, Dkt. # 40, and plaintiff

14  cross-moved for summary judgment, Dkt. # 48.

## DISCUSSION

16  **A.      Summary Judgment Standard**

17          Summary judgment is appropriate when there is no genuine dispute as to any material fact

18  which would preclude the entry of judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The

19  moving party bears the initial burden of identifying those portions of the pleadings, depositions,

20  answers to interrogatories, admissions, and affidavits, if any, that demonstrate the absence of a

21  genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once the

22  moving party has satisfied its burden, it is entitled to summary judgment if the nonmoving party

23  fails to designate specific facts showing that there is a genuine issue of material fact for trial.  Id.

24  at 324.  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable

25  fact finder could find for the nonmoving party.  In re Barboza, 545 F.3d 702, 707 (9th Cir.

26  ORDER GRANTING DEFENDANT'S
27  MOTION FOR SUMMARY JUDGMENT AND
    DENYING PLAINTIFF'S CROSS-MOTION
28  FOR SUMMARY JUDGMENT - 8

2008).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient," and factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 919 (9th Cir. 2001); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court will view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  Mueller v. Auker, 576 F.3d 979, 991 (9th Cir. 2009).

**B.    Claims Under Title VII of the Civil Rights Act of 1964**

Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a), for wrongful termination, disparate treatment, and hostile work environment.  Dkt. # 16, ¶¶ 4.1–4.3.  Defendant argues that plaintiff has failed to exhaust his administrative remedies for all but his wrongful termination claim, Dkt. # 40 at 9–14, and that the wrongful termination claim fails as a matter of law, Dkt. # 40 at 14–20.

**1.    Exhaustion Through EEOC Charge of Discrimination**

Title VII requires claimants to exhaust administrative remedies through the EEOC before filing in federal court.  42 U.S.C. § 2000e-5(e).  Filing an EEOC charge of discrimination satisfies the exhaustion requirement for all allegations of discrimination that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination."  B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002).  The language of the EEOC charge is to be construed "with utmost liberality"; claims that are "like or reasonably related to the allegations contained in the EEOC charge" are considered exhausted.  Id.  In determinating whether allegations not specified in the EEOC charge are exhausted, a court may consider

> such factors as the alleged basis of the discrimination, dates of the
> discriminatory acts specified within the charge, perpetrators of

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT - 9

1        discrimination named in the charge, and any locations at which

2        discrimination is alleged to have occurred.  In addition, the court should

3        consider plaintiff's civil claims to be reasonably related to allegations

4        in the charge to the extent that those claims are consistent with the

           plaintiff's original theory of the case.

5  Id.

6       Plaintiff's EEOC charge of discrimination, Dkt. # 43, Ex. CC, satisfies Title VII's

7  exhaustion requirement as to plaintiff's claims for wrongful termination and disparate treatment,

8  but not as to plaintiff's claim for hostile work environment.  The charge alleges that plaintiff was

9  falsely accused of harassment, and that this accusation was the result of discrimination based on

10  plaintiff's sex (male), religion (Muslim), and national origin ("Arab").  The charge further

11  alleges that plaintiff's discharge was the result of the same discrimination, and also retaliation

12  for plaintiff's protests against the allegedly discriminatory harassment accusation.  Dkt. # 43, Ex.

13  CC.  Accordingly, plaintiff has satisfied Title VII's exhaustion requirement for his claims of

14  disparate treatment and wrongful termination.

15       The charge does not allege, however, that plaintiff experienced discriminatory treatment

16  beyond these two incidents, and thus does not allege that plaintiff was subject to harassment so

17  pervasive that it created an abusive working environment.  See Meritor Sav. Bank, FSB v.

18  Vinson, 477 U.S. 57, 66 (1986) (recognizing claim for hostile work environment under 42

19  U.S.C. § 2000e-2(a)(1)); Swinnie v. Geren, 379 F. App'x 665, 667 (9th Cir. 2010) (finding

20  hostile work environment claim not exhausted where EEOC charge alleged "discrete acts of

21  discrimination" that "would not have put the EEOC investigator on notice of a pattern of

22  conduct 'sufficiently severe or pervasive' so as to create an 'abusive work environment'"

23  (quoting Manatt v. Bank of Am., 339 F.3d 792, 798 (9th Cir. 2003))).  Accordingly, plaintiff has

24  failed to exhaust his administrative remedies for his hostile work environment claim, and the

25  Court lacks subject-matter jurisdiction to hear it.  See B.K.B., 276 F.3d at 1100.

26  ORDER GRANTING DEFENDANT'S

27  MOTION FOR SUMMARY JUDGMENT AND
    DENYING PLAINTIFF'S CROSS-MOTION

28  FOR SUMMARY JUDGMENT - 10

1  Defendant's motion for summary judgment is granted as to plaintiff's Title VII claim for
2  hostile work environment.

3  **2.   Merits of Remaining Title VII Claims**

4  A plaintiff alleging employment discrimination can survive a motion for summary
5  judgment on a Title VII claim by establishing a prima facie case of discrimination and then, if
6  the defendant proffers a non-discriminatory explanation for the adverse action, by identifying a
7  genuine issue of material fact as to whether the defendant's explanation is pretextual.  See
8  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  At the summary judgment stage,
9  the "requisite degree of proof necessary to establish a prima facie case for Title VII . . . is
10  minimal and does not even need to rise to the level of a preponderance of the evidence."
11  Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1062 (9th Cir. 2002).

12  To establish a prima facie case of disparate treatment, plaintiff must show that (1) he
13  belongs to a protected class; (2) he was qualified for his position as steward; (3) he experienced
14  an adverse employment action; and (4) someone similarly situated was treated more favorably.
15  Villiarimo, 281 F.3d at 1062.  Similarly, to establish a prima facie case of wrongful termination,
16  plaintiff must show that (1) he belongs to a protected class; (2) he was performing his job in a
17  satisfactory manner; (3) he was discharged; and (4) the employer sought a replacement with
18  qualifications similar to those of plaintiff.  See Rose v. Wells Fargo & Co., 902 F.2d 1417, 1421
19  (9th Cir. 1990).

20  Plaintiff has failed to state a prima facie case of either claim.  Plaintiff has successfully
21  met the first element of both claims by showing that he is a Muslim male of Algerian national
22  origin, and the third element of both claims by showing that he was fired.  Plaintiff's case,
23  however, falls short on the second element of both claims.

24  Plaintiff has not identified sufficient evidence showing that he was performing his job
25  satisfactorily.  It is uncontested that plaintiff's performance evaluations were broadly positive,

26
27  ORDER GRANTING DEFENDANT'S
   MOTION FOR SUMMARY JUDGMENT AND
   DENYING PLAINTIFF'S CROSS-MOTION
28  FOR SUMMARY JUDGMENT - 11

and that he received glowing feedback on the quality of his cooking.  But it is also uncontested that plaintiff disobeyed direct orders to work cooperatively with Ms. Holloway, though plaintiff argues that he was justified in disobeying those orders.  See Pejic v. Hughes Helicopters, Inc., 840 F.2d 667, 674 (9th Cir. 1988) (holding that plaintiff had failed to show satisfactory performance where plaintiff failed to pay union dues, a condition of employment); see also Villiarimo, 281 F.3d at 1062 & n.8 (noting that it was not clear plaintiff had shown she was qualified for her position where plaintiff did not dispute that she had failed to perform important tasks and was told that she was terminated due to her failure to perform her job satisfactorily).  Accordingly, plaintiff has failed to state a prima facie claim for either disparate treatment or wrongful termination.[1]

A plaintiff can also defeat a motion for summary judgment by producing direct or circumstantial evidence creating a genuine issue of fact as to whether a discriminatory reason motivated the defendant's adverse employment action.  Pacific Shores Props., LLC v. City of Newport Beach, 730 F.3d 1142, 1158–59 (9th Cir. 2013).  Plaintiff has introduced evidence that Mr. Royer and other members of the Tracker's crew held racist and Islamophobic views: specifically, testimony that crew members regularly referred to African-Americans using racist slurs and referred to plaintiff as "the Arab" and a "terrorist hijacker," and evidence that one of defendant's human resources administrators believed that stubbornness was a "cultural" characteristic.  Dkt. # 49-1 at 3–7, 15–21, 37–41, 57; Dkt. # 49-2 at 1–11, 51.  This evidence primarily supports plaintiff's exhaustion-barred hostile work environment claim, but to the extent it constitutes circumstantial evidence of discrimination motivating plaintiff's termination,

---

[1] Plaintiff also fails to identify a similarly situated employee who was treated more favorably. Though plaintiff sees an "obvious double-standard" in defendant's failure to discipline Ms. Holloway for their conflict, Dkt. # 43, Ex. AA, plaintiff has not offered any evidence suggesting that Ms. Holloway was unwilling to work with him.  Thus, plaintiff and Ms. Holloway are not similarly situated because he disobeyed orders to cooperate and she did not.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT - 12

the Court concludes that the evidence, even when viewed in the light most favorable to plaintiff, does not create a genuine issue of fact as to whether that bigotry – rather than plaintiff's failure to cooperate with Ms. Holloway – motivated the firing.

Specifically, plaintiff does not offer any evidence of bigotry on the part of Mr. Wyman, the port engineer with authority over the crews of both ships who oversaw two meetings attempting to resolve plaintiff's dispute with Ms. Holloway and who eventually made the decision to fire plaintiff.  See Dkt. # 41.  Mr. Wyman personally instructed plaintiff on multiple occasions to cooperate with Ms. Holloway, and when plaintiff did not comply, Mr. Wyman delivered a warning letter to plaintiff informing him that repeated noncompliance would result in dismissal.  When plaintiff failed to report on March 7, 2013, Mr. Wyman prepared and personally delivered plaintiff's discharge letter.  Dkt. # 41, ¶ 20.  In light of this evidence and the rest of the record, the Court concludes that plaintiff has failed to identify a genuine issue of fact regarding the motivation for plaintiff's termination.  See DeHorney v. Bank of Am. Nat. Trust & Sav. Ass'n, 879 F.2d 459, 468 (9th Cir. 1989) (per curiam) (affirming summary judgment for lack of evidence of discriminatory motivation where plaintiff presented no evidence that "ultimate decision maker" was tainted by racial bias, and thus there was no "nexus between the alleged racially biased statements and the decision to terminate").

Defendant's motion for summary judgment is granted as to plaintiff's Title VII claims for disparate treatment and wrongful termination.

## C.    Claims Under Washington's Law Against Discrimination

Plaintiff also asserts claims under Washington's Law Against Discrimination (WLAD), RCW 49.60, *et seq.*, for wrongful termination, disparate treatment, and hostile work environment.

### 1.    Wrongful Termination

WLAD makes it an unfair practice for any employer to discharge a person from

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT - 13

employment because of "race, creed, color, [or] national origin." RCW 49.60.180(2). To establish a prima facie case of wrongful termination, "an employee must demonstrate that he or she (1) belongs in a protected class; (2) was discharged; (3) was doing satisfactory work; and (4) was replaced by someone not in the protected class." Plemmons v. U.S. Bancorp, 2006 WL 290557, at *3 (W.D. Wash. Feb. 7, 2006). Washington courts often look to federal case law on Title VII when interpreting the WLAD. Blackburn v. State, 186 Wn.2d 250, 257–58 (2016). For all the reasons set forth above, see supra Part B.2, plaintiff has failed to show that he was doing satisfactory work and accordingly fails to state a prima facie claim of wrongful termination under WLAD. Defendant's motion for summary judgment as to this claim is granted.

### 2.     Disparate Treatment

WLAD forbids any employer to discriminate against any person in the conditions of their employment because of "race, creed, color, [or] national origin." RCW 49.60.180(3). To establish a prima facie case of disparate treatment, plaintiff must show that the employer "treats some people less favorably than others because of their race, color, religion, sex, or national origin." Blackburn, 186 Wn.2d at 258. In a disparate treatment case, the plaintiff has the burden of proving that a discriminatory animus more likely than not motivated the employer's practices. Shannon v. Pay 'N Save Corp., 104 Wn.2d 722, 727 (1985), abrogated on other grounds by Blair v. Wash. State University, 108 Wn.2d 558, 573 (1987). As set forth above, see supra Part B.2, plaintiff has failed to identify a genuine issue of fact as to whether his termination was motivated by discrimination. Defendant's motion for summary judgment on this claim is granted.

### 3.     Hostile Work Environment

WLAD prohibits harassment based on a protected characteristic that rises to the level of a hostile work environment. See RCW 49.60.180(3). "An employee must demonstrate four elements for a hostile work environment claim: that the harassment (1) was unwelcome, (2) was

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT - 14

1  because of a protected characteristic, (3) affected the terms or conditions of employment, and (4)

2  is imputable to the employer." Blackburn, 375 P.3d at 1081.  Unlike Title VII, WLAD does not

3  require a claimant to pursue his hostile work environment claim through administrative remedies

4  before filing in federal court.  Gonzalez v. Nat'l R.R. Passenger Corp., 376 F. App'x 744, 746

5  (9th Cir. 2010).

6       As described above, plaintiff has identified evidence of bigoted harassment by plaintiff's

7  coworkers, including by Mr. Royer, plaintiff's supervisor.  Defendant argues that it cannot be

8  held vicariously liable for any hostile work environment that plaintiff may have experienced

9  because (1) it exercised reasonable care to prevent and correct any harassing behavior by

10  plaintiff's supervisor, and (2) plaintiff unreasonably failed to take advantage of the preventive or

11  corrective opportunities that defendant provided.  See Vance v. Ball State Univ., 570 U.S. 2434,

12  2439 (2013).  This affirmative defense is available only where the plaintiff suffered no tangible

13  job consequences as a result of the supervisor's actions.  Burlington Indus., Inc. v. Ellerth, 524

14  U.S. 742, 765 (1998).  As explained above, the tangible job consequence in this case – plaintiff's

15  termination – resulted from plaintiff's explicit disobedience rather than from discrimination.

16  Accordingly, defendant can escape vicarious liability for any hostile work environment created

17  by plaintiff's supervisor if it can show both (1) defendant's reasonable care and (2) plaintiff's

18  unreasonable failure to avail himself of preventive opportunities.

19       Defendant has met that burden here by introducing evidence of its anti-harassment policy,

20  Dkt. # 43, Ex. GG, HH, evidence of plaintiff's awareness of that policy, Dkt. # 43, Ex. HH, and

21  evidence of plaintiff's failure to mention a pattern of harassment at any time before filing this

22  lawsuit in November 2014, including during Mr. Wyman's two meetings with plaintiff and Ms.

23  Holloway in which he asked both of them directly whether they felt as though they were

24  experiencing harassment, Dkt. # 41, ¶¶ 13–15.  In light of this evidence, defendant cannot be

25  held vicariously liable for the alleged hostile actions of defendant's other employees.  See

26
27  ORDER GRANTING DEFENDANT'S
    MOTION FOR SUMMARY JUDGMENT AND
    DENYING PLAINTIFF'S CROSS-MOTION
28  FOR SUMMARY JUDGMENT - 15

1   <u>Ellerth</u>, 524 U.S. at 765.

2

3       For all the foregoing reasons, defendant's motion for summary judgment (Dkt. # 40) is

4   GRANTED.  Plaintiff's cross-motion for summary judgment (Dkt. # 48) is DENIED.

5   Defendant's motions in limine (Dkt. # 69) are DENIED as moot.  The Clerk of Court is directed

6   to enter judgment against plaintiff and in favor of defendant.

7

8       SO ORDERED this 11th day of January, 2017.

9

10

11                                      Robert S. Lasnik
                                        United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   ORDER GRANTING DEFENDANT'S
     MOTION FOR SUMMARY JUDGMENT AND
27   DENYING PLAINTIFF'S CROSS-MOTION
     FOR SUMMARY JUDGMENT - 16
28